**In the Matter of the GUARDIANSHIP OF Gabrielle Julia DEAL–BURCH,**

**Randall Deal and Gayla Deal, Grandparents–Appellants.**

v.

**Alton Burch, Jr., Father–Appellee.**

No. 08–0206.

Court of Appeals of Iowa.

Nov. 13, 2008.

David L. Strand of Strand Law Office, Decorah, for appellant.

Laura J. Parrish Maki of Miller, Pearson, Gloe, Burns, Beatty & Cowie, P.L.C., Decorah, for appellee.

Considered by SACKETT, C.J., and EISENHAUER and DOYLE, JJ.

SACKETT, C.J.

Gayla and Randall Deal appeal from a district court decision rescinding and refusing to make permanent their temporary guardianship of the minor child Gabrielle Julia Deal–Burch after the district court found that it had no jurisdiction to appoint

a guardian for the child. The Deals claim Iowa has jurisdiction because the child is a resident of this state. We find that because the child had lived in Iowa for more than six consecutive months immediately before the commencement of the proceedings to establish the guardianship, Iowa was her home state and the district court did have jurisdiction. We reverse the finding of no jurisdiction and remand to the district court for further proceedings. We reverse and remand.

**BACKGROUND.** Gabrielle was born to the marriage of Shiloh Deal–Burch and Alton Burch, Jr. in Georgia in February of 2004. Shortly thereafter the family moved to Iowa, where in March of 2005 the marriage was dissolved. In dissolving the marriage the Iowa district court approved a stipulation of the parties which provided that Shiloh was awarded sole custody of the child. Alton was granted visitation only if it was exercised within 150 miles of Shiloh's residence or if Shiloh happened to be in the area of Alton's residence.[1] He was also ordered to pay child support.[2] After the dissolution Shiloh and the child remained in Iowa and Alton moved to Georgia. On December 14, 2007, Shiloh was killed in a motor vehicle accident and Gabrielle was injured in the same accident. At the time of the accident Shiloh and Gabrielle still resided in Iowa.

Randall and Gayla Deal, Gabrielle's grandfather and step-grandmother, residents of Tennessee, were the first to learn of the accident and that Gabrielle was hospitalized in Rochester, Minnesota. Alton, a resident of the state of Georgia, learned of it a day later. He left Georgia

to travel to Rochester and when he was an hour away he received a call telling him Randall and Gayla Deal had been appointed guardians by an Iowa court and they were taking or had taken the child. The Iowa guardianship was established on December 17, 2007. The Deals returned to Iowa only to close their daughter's affairs and then took the child to their home in Tennessee.

On December 18, 2007, Alton filed an application to terminate the guardianship. He requested an immediate hearing. The district court heard the matter on January 15, 2008. The district court noted the hearing was a time-limited hearing and the issue was whether the guardianship should be terminated and if not terminated, whether there should be a substitute temporary guardian. No guardian ad litem was appointed for the child prior to the hearing, the court and counsel having decided the issue of appointing a guardian ad litem was contingent on the court's ruling following the hearing.[3]

On January 25, 2008, the district court entered a ruling finding the Iowa district court did not have jurisdiction to appoint a guardian for Gabrielle. The court sustained Alton's application to terminate the guardianship and dismissed the Deals' petition for temporary and permanent guardianship. The district court found that when one parent dies, the domicile of the surviving parent fixes the domicile of the child in the absence of any showing of relinquishment and abandonment. The court also found that Alton had not relinquished or abandoned Gabrielle; conse-

---

1. Shiloh was represented by counsel but Alton was not. The stipulation noted Shiloh was receiving sole custody because Alton was moving to Georgia.

2. He paid some but not all of the child support ordered.

3. The parties and the district court appeared to recognize that depending on the court's ruling on the issue presented, a further hearing might be necessary.

quently, Gabrielle's domicile was the same as Alton's and the Iowa court had no jurisdiction. The district court did not address Alton's assertion that he is able to provide care for his daughter, apparently finding it had no jurisdiction to do so.

The district court supported its ruling by citing *In re Skinner's Guardianship*, 230 Iowa 1016, 300 N.W. 1 (1941) (finding Iowa court did not have jurisdiction to determine guardianship of child when surviving parent was not a resident of Iowa with five justices concurring, one specially concurring, and three dissenting). *Skinner's* addressed the issue of the jurisdiction of the Iowa court to entertain a petition for a guardianship after the death of the father of a minor child. *Skinner's*, 230 Iowa at 1020, 300 N.W. at 2. The father, who had custody of the child under the provision of a divorce decree, lived with the child in Iowa. *Id.* at 1020, 300 N.W. at 2. The noncustodial mother was a resident of Texas. *Id.* at 1020, 300 N.W. at 3. The mother filed a petition with the district court in Pottawattamie County, Iowa, seeking guardianship of the child. *Id.* at 1019, 300 N.W. at 1. The Supreme Court found Iowa had no jurisdiction to entertain the petition and specifically found:

> At the moment of Lloyd Skinner's [the father's] death the domicile of this minor child attached immediately to the domicile of his surviving parent, his mother. No lapse of time and no act of the surviving parent is required to effect the change. The mother did not live in

Iowa. She was a resident of the State of Texas.

Thus we find that the domicile of the minor, Louis Welborn Skinner, was in the state of Texas, and that the Pottawattamie district court had no jurisdiction to appoint a guardian of his person,[4] and it erred in so doing.

*Id.* at 1022, 300 N.W. at 4.

**ISSUES ON APPEAL.** The Deals contend that the Iowa court has jurisdiction to determine guardianship because the child had been in the sole custody of her mother, and it is in the child's best interest.

■ **SCOPE OF REVIEW.** Our review of the evidence on the jurisdictional issue is de novo. *O'Neal v. O'Neal*, 329 N.W.2d 666, 667 (Iowa 1983); *see also St. Clair v. Faulkner*, 305 N.W.2d 441, 445 (Iowa 1981).

■ **ANALYSIS.** The Deals recognize, as do we, that the holding in *Skinner's* has not been modified or reversed.[5] While recognizing the holding in *Skinner's*, the Deals argue the holding is diminished by its dissent and by holdings in several subsequent cases which we, because of our holding, find it unnecessary to address.

In 1999, the Iowa legislature adopted, along with a number of other states, the Uniform Child–Custody Jurisdiction and Enforcement Act (UCCJEA).[6] *See* 1999 Iowa Acts ch. 103. This act, which appears in the Iowa Code as Chapter 598B,

4. At that point in time, the Iowa statutes did not provide for a conservator to manage the property of the ward. The reference to guardian of his person and guardian of his property was common place. *See* Iowa Code § 12574 (1939) (providing that the surviving parent becomes guardian of the minor's person); Iowa Code § 12575 (1939) (providing that a guardian must be appointed to manage the minor's property).

5. The case has been cited only twice by Iowa courts in published opinions since its filing. *See In re Lancey's Guardianship*, 232 Iowa 191, 195, 2 N.W.2d 787, 789 (1942); *In re McKenna*, 58 B.R. 221, 223 (Bankr.N.D.Iowa 1985).

6. The act repealed and replaced all the provisions of the Uniform Child Custody Jurisdiction Act (UCCJA). *See* 1999 Iowa Acts ch. 103 § 47.

provides it is the exclusive jurisdictional basis for making a child custody determination by this state.[7] Iowa Code § 598B.201(1), (2) (2007). Child-custody proceedings include guardianship procedures.[8] Iowa Code § 598B.102(4).

Neither party nor the district court has addressed the provisions of this act. The legislature, however, has said that 598B.201(1) is the exclusive jurisdictional basis for making a child-custody determination by a court of this state and "a child custody determination by a court" has been defined to include a guardianship. *See* Iowa Code §§ 598B.201(2), 598B.102(3), (4). The drafters of the Uniform Child Custody Jurisdiction and Enforcement Act, and Iowa in adopting it, clearly intended to expand the reach of the statute to include proceedings concerning guardianships of children. *See In re B.P.*, 343 Mont. 345, 184 P.3d 334, 338 (2008) (explaining that drafters of the UCCJEA and states adopting it intended it to have an expanded reach to govern more types of child custody proceedings, including child abuse and neglect proceedings). We therefore feel compelled to consider the act to determine whether the Iowa Courts had and/or have jurisdiction to entertain the issue of the guardianship. In considering the act, the only conclusion we can reach is that when the petition for temporary guardianship was filed in Iowa, the Iowa court had jurisdiction to entertain it if one of the provisions of section 598B.201(1) applied. We look to section

598B.201 (1)(a) which provides in relevant part:

1. Except as otherwise provided in section 598B.204, a court of this state has jurisdiction to make an initial child-custody determination only if any of the following applies:

a. This state is the home state of the child on the date of the commencement of the proceeding....

Iowa Code section 598B.102(7) defines "home state" as "the state in which a child lived with a parent ... for at least six consecutive months immediately before the commencement of a child-custody proceeding."

The child had lived the required time in Iowa so it is her home state and there is no evidence in the record to support a finding that another state is her home state and therefore no court of any other state would have jurisdiction at this time. Gabrielle lived with her mother in Iowa for more than six months and nearly all her life immediately before the guardianship proceedings seeking custody of the child were commenced, thus giving the Iowa court jurisdiction to entertain the petition for temporary guardianship. Consequently, we must reverse the district court's finding it was without jurisdiction, reinstate the temporary guardianship, and remand to the district court to consider those issues put forth in the filings. Namely, the court must consider Alton's request that the temporary guardianship be vacated and that he be named custodian of his

---

7. Iowa Code section 598B.201(2) provides: "Subsection 1 is the exclusive jurisdictional basis for making a child-custody determination by a court of this state." Subsection 1 provides in applicable part: "a court of this state has jurisdiction to make an initial child-custody determination only if any of the following applies:" Iowa Code § 598B.201(1).

8. Iowa Code section 598B.102(4) specifically includes guardianships in the definition of "child-custody proceeding" for determination of jurisdictional issues whereas the UCCJEA's precursor, the Uniform Child–Custody Jurisdiction Act (UCCJA), did not specifically include guardianships. *See* Iowa Code § 598A.2(3)(1997).

child, and the Deals' request that they be made permanent guardians.

We recognize that with the father living in Georgia and the grandparents living in Tennessee, Iowa may be an inconvenient forum to address these issues. In that case, the act allows the district court of this state to exercise the authority to determine it is an inconvenient forum and to provide certain protections for the child, including a stay of proceedings upon condition that child-custody proceedings be promptly commenced in another designated state and the imposition of any other conditions the Iowa district court considers just and proper.[9] Iowa Code § 598B.207(1), (3).

We reverse the order terminating and rescinding the temporary guardianship for lack of jurisdiction and the order dismissing the petition for guardianship. We remand to the district court for further proceedings not inconsistent with this ruling.

**REVERSED AND REMANDED.**

---

9. Section 598B.207 provides in relevant part:
   1. A court of this state which has jurisdiction under this chapter to make a child-custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. The issue of inconvenient forum may be raised upon motion of a party, the court's own motion, or request of another court.
   . . .
   3. If a court of this state determines that it is an inconvenient forum and that a court of another state is a more appropriate forum, it shall stay the proceedings upon condition that a child-custody proceeding be promptly commenced in another designated state and may impose any other condition the court considers just and proper.