**IN THE COURT OF APPEALS OF IOWA**

No. 18-0961
Filed August 1, 2018

**IN THE INTEREST OF R.E.,**
**Minor Child,**

**A.E., Father,**
      Appellant,

**A.A., Mother,**
      Appellant.
_____

Appeal from the Iowa District Court for Warren County, Kevin A. Parker, District Associate Judge.

A mother and father separately appeal the termination of their parental rights.  **AFFIRMED ON BOTH APPEALS.**

Magdalena B. Reese of Cooper, Goedicke, Reimer, & Reese, P.C., West Des Moines, for appellant father.

Blake D. Lubinus of Lubinus Law Firm, P.L.L.C., Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

M. Kathryn Miller of Juvenile Public Defender, Des Moines, guardian ad litem for minor child.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**VOGEL, Judge.**

A mother and father separately appeal the termination of their parental rights.

## I. Background Facts and Proceedings

The family came to the attention of the Iowa Department of Human Services (DHS) in August 2017 after R.E. was born in Mason City and tested positive for the presence of amphetamines and methamphetamine in his system. The mother, A.A., also tested positive for amphetamines. An ex-parte removal order was granted on August 7, 2017, due to further concerns of substance abuse, a history of DHS involvement,[1] and concerns the mother and father would flee Iowa. After giving birth, the mother indicated she had previously lived in Iowa, but she and the father, A.E., had moved to Missouri and they were travelling to Minnesota when she went into labor. After R.E.'s removal, he was placed in family foster care where he remained throughout these proceedings.

On September 13, 2017, R.E. was adjudicated a child in need of assistance (CINA) pursuant to Iowa code section 232.2(6)(c)(2), (n), and (o) (2017). Following the CINA adjudication, the mother did not make herself available to the DHS for services. She attended court hearings but did not contact the DHS for other services, including to set up visitations. In addition, following the adjudication, she was arrested twice. As to the father, the DHS attempted to collect a DNA sample pursuant to an October 23, 2017 court order to establish paternity when he was incarcerated; however, the father was released from jail on bond and did not

---

[1] The mother's parental rights to her four older children were previously terminated. The father's previous DHS involvement resulted in his children being returned to his care.

provide a sample.[2]  The father has also not made himself available for services, including substance-abuse and mental-health evaluations, and the father has not set up or attended visitations and has not attended court hearings.

The State petitioned to terminate the parental rights of the mother and father on January 12, 2018.  A contested hearing was held on February 27, 2018, after which the district court terminated the parents' parental rights to R.E. under Iowa Code section 232.116(1)(b), (e),[3] (g), and (h).

The mother and father appeal.

## II.  Standard of Review

We conduct a de novo review of jurisdictional issues raised under Iowa Code chapter 598B.  *See In re Guardianship of Deal–Burch*, 759 N.W.2d 341, 343 (Iowa Ct. App. 2008).  We review termination proceedings de novo, giving weight to, but not being bound by, the district court's fact findings.  *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016).  There must be clear and convincing evidence of the statutory grounds for termination.  *Id.*

## III.  Jurisdiction

The mother asserts the district court did not have jurisdiction over the CINA proceeding and termination because she and the father lived in Missouri prior to her giving birth to R.E. in Iowa and were only driving through Iowa when she went into labor.

---

[2] The father provided a DNA sample after the termination hearing.  The district court left the record open to receive the test results, which indicated A.E. is R.E.'s biological father.  In its termination order, the court found A.E. is R.E.'s biological father.

[3] The district court cited paragraph (c) as a ground for termination, however the State's original petition recommended termination under paragraph (e) and the parents' individual petitions argue against termination under paragraph (e), not (c).

Iowa courts have temporary emergency jurisdiction "if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse." Iowa Code § 598B.204(1). Here, R.E. was born and tested positive for amphetamines and methamphetamine while in Iowa. It is clear Iowa had temporary emergency jurisdiction. *See id.*; *In re E.D.*, 812 N.W.2d 712, 716–17 (Iowa Ct. App. 2012). "A custody determination made under the court's temporary emergency jurisdiction is a temporary order." *In re J.M.*, 832 N.W.2d 713, 720 (Iowa Ct. App. 2013) (citing Uniform Child Custody Jurisdiction and Enforcement Act (1997) § 204 cmt. (setting forth the official comments to the temporary emergency jurisdiction section of the UCCJEA)). Future CINA or termination orders cannot be based on only temporary emergency jurisdiction. *Id.*

A court has jurisdiction to make an initial child custody determination if "[t]his state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding." *See* Iowa Code § 598B.201(1)(a). "Home state" is defined as "the state in which the child lived from birth with [a parent or person acting as a parent]." *Id.* § 598B.102(7). A "person acting as a parent" includes a person who "has physical custody of the child" and "has been awarded legal custody by a court or claims a right to legal custody under the law of this state." *Id.* § 598B.102(13). Here, R.E. was born in Iowa and was placed in the custody of the DHS after being immediately removed from the parents' custody. R.E. has lived in Iowa, in foster care, since the removal and has not resided in any

another state. The district court found in the temporary removal order that "[the mother] has made comments to hospital staff about moving to Minnesota or Missouri with [R.E.]." The August 16 removal order states, "[T]he Court denies mother's motion to move jurisdiction to Missouri." Numerous reports and filings in the CINA file list an Indianola address for the mother. The October 4 DHS case plan states, "[I]t is unknown to the Department where [the mother] is residing at this time. In the past she has indicated she has been staying in Kirksville, MO at an extended stay motel and with [the father's] mother in Carlisle, IA." None of the records included in this appeal show the mother had established a Missouri residence. Accordingly, we conclude Iowa is R.E.'s "home state" under chapter 598B and the district court had jurisdiction over subsequent proceedings.

### IV. Statutory Grounds

The mother and father both assert the State failed to prove the statutory grounds for termination by clear and convincing evidence under Iowa Code section 232.116(1)(b), (e), (g), and (h). "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 765, 774 (Iowa 2012). Accordingly, we will proceed under paragraph (h) as to both parents.

Under section 232.116(1)(h), the court may terminate parental rights if it finds the State has proved by clear and convincing evidence the child (1) is three years of age or younger; (2) has been adjudicated CINA; (3) has been removed from the physical custody of the parent for the last six consecutive months and any trial period at home has been less than thirty days; and (4) cannot be returned to the parent's custody at the time of the termination hearing. The only question is

whether there was clear and convincing evidence R.E. could not be returned to the mother's or the father's custody at the time of the termination hearing. Iowa Code § 232.116(1)(h)(4); *see In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) (indicating the statutory language "at the present time" refers to the termination hearing).

At the time of the termination hearing, neither the mother nor the father had begun to reengage with R.E. since his removal. The mother attended court hearings but did not have contact with the DHS and did not work with the DHS to set up or attend visitations. Also at the time of the termination hearing, the mother had separate pending burglary and theft charges. Because of the uncertainty surrounding the mother's criminal charges and her general lack of engagement in R.E.'s life and services offered, the State proved by clear and convincing evidence that R.E. could not be returned to the mother without the risk of adjudicatory harm. *See* Iowa Code § 232.116(1)(h).

The father also faced pending criminal charges for burglary and possession of a controlled substance (methamphetamine) at the time of the termination hearing. In addition, the father did not attend any court hearings and delayed paternity testing until after the termination hearing. Like the mother, the father also did not communicate with the DHS and was difficult to contact via phone. Because the father has not participated in any DHS offered services and the father's future regarding criminal charges is uncertain, the State proved by clear and convincing evidence that R.E. could not be returned to the father without the risk of adjudicatory harm. *See id.* § 232.116(1)(h).

Both parents request a six-month extension of time to work towards reunification. *Id.* § 232.104(2)(b). As previously mentioned, neither parent has

taken the initiative to set up visitation with R.E. or to proactively engage in services. In the father's instance, paternity was an issue since R.E.'s removal, yet the father did not provide a DNA sample—despite a court order requiring testing—until after the termination hearing. Consequently, we agree that granting the parents an additional six months pursuant to Iowa Code section 232.104(2)(b) is not warranted.

## V. Best Interests and Permissive Factors

The mother and the father also claim termination was not in the best interests of the child under Iowa Code section 232.116(2). R.E. was removed from his parents' care immediately after his birth. In the months after the removal and before the termination hearing, the mother did not contact the DHS to set up visitations, she completed a substance-abuse evaluation but did not follow-up on any recommended services, and she was difficult to communicate with by providing phone numbers that were either disconnected or answered by unknown individuals. She did not demonstrate the ability to be a caregiver for R.E. or show an interest in providing for his safety and wellbeing.

While the mother completed a substance-abuse evaluation and attended hearings, the father was completely absent in the months following R.E.'s removal. Like the mother, the father did not communicate with the DHS or set up visits with R.E. Also, there is no indication he has attended to mental-health or substance-abuse issues that plagued his past. Accordingly, neither parent has demonstrated the ability to participate in services that would demonstrate an interest in, or ability to, parent R.E. We agree it was in the child's best interests to terminate both parents' parental rights.

In addition, the mother and the father assert the court did not need to terminate the parent–child relationship because R.E. could have been placed with a relative and termination would have been detrimental to R.E. due to the bond he shares with the parents. *See id.* § 232.116(3)(a), (c). The factors militating against termination in section 232.116(3) are permissive, not mandatory. *See In re D.S.*, 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011). Due to R.E.'s removal at birth neither parent had spent enough time with R.E. to form a significant bond that would preclude termination under paragraph (c). Also, R.E. was removed and placed in foster care, not with a relative, which is required to satisfy paragraph (a). *See* Iowa Code § 232.116(3)(a) (stating the court need not terminate if a relative has legal custody of the child). Accordingly, there were no factors that precluded termination.

Finally, the father argues the DHS did not make reasonable efforts for his reunification with R.E. The State contends error was not preserved. To preserve error, the father had an "obligation to demand other, different, or additional services prior to a permanency or termination hearing*." In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005). The father states he preserved error by filing a motion for paternity testing and by arguing his position at the termination hearing. However, the father has failed to state where in the record he objected to the services offered or requested additional services prior to the termination hearing. *Id.* And as noted above, the father did not take advantage of the October 23, 2017 court order for paternity testing. Error has therefore not been preserved.

**VI. Conclusion**

Because Iowa is R.E.'s "home state," the district court had jurisdiction over termination proceedings. Also, because of each parent's individual pending criminal proceedings and lack of participation in visitation or other offered services, R.E. could not be returned at the time of the termination hearing. Further, termination was in the child's best interests, no factors precluded termination, the DHS made reasonable efforts towards reunification, and a six-month extension was not warranted for either parent.

**AFFIRMED ON BOTH APPEALS.**