**IN THE COURT OF APPEALS OF IOWA**

No. 19-0690
Filed September 25, 2019

**IN THE INTEREST OF L.H., J.H., C.H., and D.H.,**
**Minor Children,**

**D.H., Mother,**
       Appellant.

_____

Appeal from the Iowa District Court for Des Moines County, Emily Dean, District Associate Judge.

The mother of children adjudicated in need of assistance appeals from a permanency review order. **AFFIRMED.**

Joshua P. Schier of Cray Law Firm, Burlington, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Heidi D. Van Winkle of Van Winkle Law Office, Burlington, attorney and guardian ad litem for minor children.

Considered by Potterfield, P.J., Greer, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**MAHAN, Senior Judge.**

The mother of four children adjudicated in need of assistance appeals from a permanency review order, claiming the juvenile court erred in ordering a six-month extension and continued removal of the children. Upon our review, we affirm.

## I. *Background Facts and Proceedings*

This family moved from Tennessee to Iowa in February 2018. In April, the children came to the attention of the Iowa Department of Human Services (DHS) due to concerns of physical abuse, neglect, and drug use by the parents. A DHS caseworker reported the children were in need of medical and dental treatment, had never attended school, were not being fed properly, and had not received any immunizations. The children were removed from the parents' custody. In June, the juvenile court entered an order adjudicating the children in need of assistance (CINA) and numerous services were offered to the parents for reunification with the children.

At the time of the permanency hearing in April 2019, DHS recommended the parents be given a six-month extension "to allow them to progress to reunification." DHS also recommended the children remain in family foster care. Following the hearing, the juvenile court entered its permanency order, granting the parents an additional six months to achieve reunification. The mother appealed from that order.

Following the mother's appeal, the State filed a motion for limited remand to address the question of subject matter jurisdiction under the Uniform Child Custody Jurisdiction Enforcement Act (UCCJEA). The supreme court granted the

State's motion and remanded to the juvenile court "to determine whether Iowa has the proper jurisdiction for hearing these [CINA] cases or whether Iowa is limited to temporary emergency jurisdiction." On remand, the juvenile court entered an order determining Iowa has temporary emergency jurisdiction under Iowa Code section 598B.204(1) (2018). The supreme court then transferred the case to our court for disposition.

## II. Standard of Review

We review permanency orders de novo, sorting through both the facts and law and adjudicating rights anew on the issues properly presented on appeal. *In re A.T.*, 799 N.W.2d 148, 150–51 (Iowa Ct. App. 2011). We give weight to the factual findings of the juvenile court but are not bound by them. *Id.* We review jurisdictional issues under the UCCJEA de novo. *In re J.M.*, 832 N.W.2d 713, 719 (Iowa Ct. App. 2013).

## III. Subject Matter Jurisdiction

We turn first to the issue of jurisdiction. "The parties, or the court, may raise a question of subject matter jurisdiction at any time." *Id.* "If the juvenile court lacks subject matter jurisdiction, we must dismiss." *Id.* Section 598B.201(1) of the UCCJEA provides "the exclusive jurisdictional basis for making a child-custody determination." Iowa Code § 598B.201(2). Section 598B.201(1) provides:

> 1. Except as otherwise provided in section 598B.204, a court of this state has jurisdiction to make an initial child-custody determination only if any of the following applies:
>     a. This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.

b. A court of another state does not have jurisdiction under paragraph "a", or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under section 598B.207 or 598B.208 and both of the following apply:

(1) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.

(2) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

c. All courts having jurisdiction under paragraph "a" or "b" have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under section 598B.207 or 598B.208.

d. No court of any other state would have jurisdiction under the criteria specified in paragraph "a", "b", or "c".

The juvenile court found it had temporary emergency jurisdiction. *See id.* § 598B.204(1) (providing an Iowa court with temporary emergency jurisdiction "if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse"). But "[a] custody determination made under the court's temporary emergency jurisdiction is a temporary order," and "[a] court cannot premise a subsequent child in need of assistance adjudication and dispositional order on section 598B.204(1) alone." *J.M.*, 832 N.W.2d at 720.

Here, neither Tennessee nor Iowa has home state jurisdiction under section 598.201(1)(a) because the children and both parents lived in Tennessee for the first part of the six months preceding the initiation of the CINA case and in Iowa for the second part of the six months preceding the initiation of the CINA case. *See* Iowa Code § 598B.102(7) ("'Home state' means the state in which a child lived

with a parent or a person acting as a parent for *at least six consecutive months immediately before the commencement of a child-custody proceeding.*" (emphasis added)).  In this regard, the portion of the juvenile court's order finding Tennessee to be the children's home state was in error.

In this situation, where "[a] court of another state does not have jurisdiction," Iowa may exercise jurisdiction if (1) "[t]he child[ren] and the child[ren]'s parents, or the child[ren] and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence" and (2) "[s]ubstantial evidence is available in this state concerning the child[ren]'s care, protection, training, and personal relationships."  *Id.* § 598.201(1)(b)(1)–(2).  On this record, these factors are met.  The mother is originally from Iowa, the entire family voluntarily relocated to Iowa, and the family moved in with members of the mother's family upon moving before making efforts to establish their own residence.  The father reported having full-time employment in Iowa.  The evidence relating to the neglect and parenting of the children—upon which removal was based—was collected in Iowa.  And when the children were initially removed from the parents' care, they were placed separately with different maternal relatives.  Under these circumstances, we conclude Iowa has jurisdiction under section 598.201(1)(b).  *But see J.M.*, 832 N.W.2d at 722 ("[A]t the time these proceedings commenced, the father lived in Texas.  The mother had lived in Texas for the past four years and was only temporarily in Iowa for the apparent purpose of distributing narcotics.  The mother's three other children, J.M.'s half-siblings, continued to live in Texas.  J.M. was born in Texas and for the majority of his life had lived in Texas—notwithstanding the absence from February through May of 2011.  Upon

our de novo review, we find J.M., the mother, and the father all had a significant connection with Texas.  Substantial evidence of J.M.'s care, protection, training, and personal relationships was also available in Texas.  Thus, we find Texas, and not Iowa, had jurisdiction under section 598B.201(1)(b)." (citations omitted)).  Accordingly, we proceed to the merits of the mother's appeal.

## IV.    *Permanency Order*

Following a permanency hearing, the juvenile court has four options:

> a. Enter an order pursuant to section 232.102 to return the child[ren] to the child[ren]'s home.
> b. Enter an order pursuant to section 232.102 to continue placement of the child[ren] for an additional six months at which time the court shall hold a hearing to consider modification of its permanency order. . . .
> c. Direct the county attorney or the attorney for the child[ren] to institute proceedings to terminate the parent-child relationship.
> d. Enter an order . . . to [transfer custody of the children].

Iowa Code § 232.104(2).

Here, the juvenile court went with subsection (b)—providing the parents an additional six months to work toward reunification.  The mother contends the juvenile court "erred in finding that a six-month extension was necessary and that the children could not be returned to their parents at the time of the permanency hearing."  For the following reasons, we conclude the order entered by the juvenile court served the children's best interests.  *See In re K.C.*, 660 N.W.2d 29, 32 (Iowa 2003) (observing our primary concern is the children's best interests).

At the time of the permanency hearing, the father had not completed a substance-abuse evaluation or drug testing.  He admitted to marijuana use throughout the proceedings and as recently as one month prior to the permanency hearing.  The father was not present at the hearing.  The mother had not completed

a mental-health evaluation, as ordered by the court. DHS was not allowed regular access to the home in which the parents were living,[1] although the parents were making efforts to obtain different housing. The parents had not progressed beyond semi-supervised visitation with the children. DHS recommended the children remain in family foster care "due to the need for the parents to obtain/maintain safe, sober housing while demonstrating the [ability] to meet the daily needs of the children, including medical." Upon our de novo review, we conclude immediate reunification is not in the children's best interests. We affirm the permanency order entered by the juvenile court.

**AFFIRMED.**

---

[1] The parents were living in the home of the mother's grandfather.