# IN THE COURT OF APPEALS OF IOWA

No. 21-0064
Filed January 12, 2022

**IN THE INTEREST OF C.H., S.H., and K.H.,**
**Minor Children,**

**V.R., Mother,**
    Petitioner-Appellee,

**M.H., Father,**
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Davis County, William Owens, Associate Juvenile Judge.

A father appeals from the private action terminating his parental rights.

**AFFIRMED.**

Ryan J. Mitchell of Orsborn, Mitchell, Goedken & Larson, P.C., Ottumwa, for appellant father.

Jeffrey A. Smith, Oskaloosa, for appellee mother.

Steven Goodlow, Albia, attorney and guardian ad litem for minor children.

Considered by May, P.J., and Ahlers and Badding, JJ.

**MAY, Presiding Judge.**

A father appeals the termination of his parental rights under Iowa Code section 600A.8 (2020).  On appeal, the father claims (1) the juvenile court did not have subject matter jurisdiction, (2) the mother failed to establish abandonment under section 600A.8(3), and (3) termination is not in the children's best interests.  We affirm.

"We review private termination proceedings de novo."  *In re G.A.*, 826 N.W.2d 125, 127 (Iowa Ct. App. 2012).  "We give deference to the factual findings of the juvenile court, especially those relating to witness credibility, but we are not bound by those determinations."  *Id.*  Likewise, we review jurisdictional issues under Iowa Code chapter 598B de novo.  *In re J.M.*, 832 N.W.2d 713, 719 (Iowa Ct. App. 2013).

We begin by addressing whether the court had subject matter jurisdiction.  "Jurisdictional requirements are mandatory, not discretionary.  A court that lacks subject matter jurisdiction has no authority to hear a case and must dismiss the petition*." In re R.S.*, No. 15-1112, 2015 WL 5577597, at *2 (Iowa Ct. App. Sept. 23, 2015) (citation omitted).

The father argues Iowa courts lacked jurisdiction because the children lived in Missouri when the mother commenced this action.  But Iowa Code section 598B.202(1) provides "a court of this state which has made a child-custody determination" with "exclusive, continuing jurisdiction over the determination" until a court of this state makes certain determinations otherwise.  *See* Iowa Code § 598B.202(1)(a), (b) (providing determinations a court of this state must make to divest it of subject matter jurisdiction).  Put another way, if an Iowa court previously

made a custody determination, then the court holds "continuing and exclusive jurisdiction over child custody matters" until it determines otherwise. *See Robinson v. Gross*, No. 17-1645, 2018 WL 1865098, at *2 (Iowa Ct. App. Apr. 18, 2018). Here, an Iowa court previously entered a dissolution decree establishing custody and physical care of the children at issue. And since that time, no Iowa court has made a determination that would divest it of subject matter jurisdiction. *See* Iowa Code § 598B.202(1)(a), (b). So we conclude Iowa courts continue to have "exclusive, continuing jurisdiction" over child-custody issues related to this family, including this termination-of-parental-rights action. *See R.S.*, 2015 WL 5577597, at *2–4 (applying chapter 598B to a termination-of-parental-rights action under chapter 232).

We turn to whether the mother established a statutory ground for termination. *See In re T.S.*, No. 15-0443, 2015 WL 5311413, at *1 (Iowa Ct. App. Sept. 10, 2015) ("In a private termination proceeding, the petitioner[] must establish by clear and convincing evidence the statutory ground . . . authorizing the termination of parental rights."). The mother alleged termination was justified because the father abandoned the children. *See* Iowa Code § 600A.8(3). Under section 600A.8(3)(b), a parent is "deemed to have abandoned" a child

> unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.

(3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

On appeal, the father argues the evidence does not support a finding of abandonment. We disagree. Following our de novo review of the record, we conclude the mother proved by clear and convincing evidence that the father failed to "maintain[] substantial and continuous or repeated contact" with the children as contemplated by section 600A.8(3)(b). For starters, the father has failed to make "contribution[s] toward support of the child[ren] of a reasonable amount." *See id.* at § 600A.8(3)(b). At the time of the termination hearing, the father had "not paid one dime" of court-ordered child support. He was $24,200 in arrears. He testified to providing gifts to the children. But these gifts were jointly provided with the paternal grandparents, and we think it likely that these gifts mostly came from the grandparents with the father providing a nominal financial contribution and signing his name to the card. And while section 600A.8(3)(b) only requires a parent to provide support "according to the parent's means," we think the father's support has not approached what he is capable of. In fact, the father admitted he has no physical or mental-health issues that prevent him from working. He also admitted his financial priorities are food, housing, and drugs.

Additionally, the father has failed to "visit[] the child[ren] at least monthly when physically and financially able to do so" and maintain "[r]egular communication with the child[ren] . . . when physically and financially unable to visit the child[ren]." *See id.* § 600A.8(3)(b)(1), (2). The father last exercised

visitation with the children in the summer of 2018.[1]  During the father's last visitation, the mother requested a wellness check on the children around 10:00 p.m.—and the police found the two young daughters wearing makeup and cleaning an unknown man's house.  So the mother told the father she "would feel more comfortable if [visitation] was at his mother's house, but this time he needs to come pick [the children] up."  After that, the father testified, he chose not to exercise his visitation.  Yet the father now contends the mother prevented him from having contact with the children.  But we think the mother's conditions were reasonable and did not bar his contact with the children full stop.  And while we recognize the mother later discouraged contact between the father and children during the paternal grandparents' visits with the children, we think that was reasonable given the father's downward spiral into homelessness, joblessness, substance abuse, and poor mental health.  *See In re D.W.*, No. 20-0772, 2021 WL 610186, at *3 (Iowa Ct. App.  Feb. 17, 2021) (recognizing a parent may put conditions on visitation or stop visitation when the other parent is not a safe caregiver).  So we conclude the mother is not responsible for the father's lack of contact with the children over last few years.

The father urges us to focus instead on his years of successful parenting prior to the parents' dissolution.  But we cannot ignore the past several years, during which father has failed to play an active role in the children's lives.  As we have said before, "[c]hildren are not equipped with pause buttons."  *See, e.g.*, *In re M.D.*, No. 18-1659, 2019 WL 479142, at *1 (Iowa Ct. App. Feb. 6, 2019).

---

[1] The father did attend one school event in December 2019.

Likewise, parents must fulfill their parenting duties without pause. Given the father's lack of financial support and lack of consistent contact with the children for several years, we conclude the father abandoned the children.

Finally, the father argues termination is not in the children's best interests. The children's best interests are the "paramount consideration" when determining whether to terminate. Iowa Code § 600A.1(1). Section 600A.1(2) provides,

> The best interest of a child requires that each biological parent affirmatively assume the duties encompassed by the role of being a parent. In determining whether a parent has affirmatively assumed the duties of a parent, the court shall consider, but is not limited to consideration of, the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life.

Following our de novo review, we conclude termination is in the children's best interests. *See In re A.C.W.*, No. 18-0287, 2018 WL 4923172, at *3 (Iowa Ct. App. Oct. 10, 2018). As explained, the father has not provided the children with any significant financial support. Nor has he maintained consistent contact. And even the paternal grandfather conceded he would not allow children to be alone with a person who shares his son's struggles. Moreover, the stepfather is willing to adopt the children. *Cf.* Iowa Code § 232.116(2)(b) (permitting the court to consider whether a child's placement is willing to adopt the child when making a best-interest determination); *In re Q.G.*, 911 N.W.2d 761, 771 (Iowa 2018) (noting we have "borrowed from Iowa Code section 232.116(2) and (3) to flesh out the best-interest-of-the-child test" in chapter 600A termination actions). All things considered, termination is the best choice for these children. We affirm.

**AFFIRMED.**