**IN THE COURT OF APPEALS OF IOWA**

No. 24-1300
Filed October 30, 2024

**IN THE INTEREST OF L.C. and W.C.,**
**Minor Children,**

**D.M., Mother of L.C.,**
   Appellant,

**A.C., Father,**
   Appellant.

_____

Appeal from the Iowa District Court for Greene County, Ashley Beisch, Judge.

The mother of one child and the father of both children separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Jonathan Law of Mumma & Pedersen, Jefferson, for appellant mother of L.C.

Joel Baxter of Baxter & Wild Law Office, PC, Guthrie Center, for appellant father.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Leah Patton of Patton Legal Services, LLC, Ames, attorney and guardian ad litem for minor child.

Considered by Greer, P.J., and Buller and Langholz, JJ.

**GREER, Presiding Judge.**

The juvenile court terminated the parental rights of the father of L.C. (born in 2013) and W.C. (born in 2019) pursuant to Iowa Code section 232.116(1)(f) and (j) (2024). It also terminated the rights of L.C.'s mother under section 232.116(1)(e) and (f).[1] The father and the mother both appeal.

Because "each parent's parental rights are separate adjudications, both factually and legally," we consider the appeals separately. *In re J.H.*, 952 N.W.2d 157, 171 (Iowa 2020). Our review is de novo. *Id.* at 166. And "[w]hile we are not bound by the juvenile court's factual findings, we accord them weight, especially in assessing witness credibility." *Id.*

**I. Father's Appeal.**

As an impediment to reunification, the father was imprisoned at the time of the termination trial following his 2023 convictions for attempted murder, willful injury causing serious injury, and domestic abuse assault causing bodily injury after he shot his girlfriend in the head. He was ordered to serve prison terms of twenty-five years, ten years, and one year consecutively for a total term of incarceration not to exceed thirty-six years (with a mandatory minimum of more than seventeen years).

On appeal, the father argues the juvenile court lacked subject matter jurisdiction to decide the termination petition because the appeal of his convictions was not yet completed. In a similar vein, he argues that the court was wrong to terminate his parental rights because, if the court waited until he was successful

---

[1] The juvenile court also terminated the parental rights of W.C.'s mother; she does not appeal. Any reference to "the mother" means L.C.'s mother.

on his criminal appeal, the adjudicatory ground would not persist and the statutory grounds for termination would not be met. Finally, he argues in the alternative that the juvenile court should have exercised one of the permissive exceptions in section 232.116(3) and established a guardianship in the children's paternal grandfather in lieu of terminating the father's parental rights.[2] We consider each argument in turn.

The father purports to challenge the juvenile court's subject matter jurisdiction. He recognizes "[a] lack of subject matter jurisdiction can be raised at any stage in the proceedings." *In re B.T.G.*, 784 N.W.2d 792, 795 (Iowa Ct. App. 2010). But, while the heading of the father's argument contests the court's subject matter jurisdiction, the body of the argument raises a due process challenge. The father cites to the Due Process Clause and contends he was deprived of a fair hearing on the termination petition because the trial was conducted before his criminal appeal was decided. He asserts "that proceeding prior to the completion of his initial appeal of his criminal conviction is a direct violation of the fundamental principles of Due Process." Constitutional issues—unlike subject matter jurisdiction—"must be presented to and ruled upon by the district court in order to

---

[2] In his petition on appeal, the father references testimony from the permanency hearing in support of his claims. But neither parent ordered a transcript of the permanency hearing. *See* Iowa R. App. P. 6.804(1) (requiring the appellant to complete "the combined certificate form" and serve it "on each court reporter from whom a transcript was ordered"). And "[i]f the appellant intends to argue on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the record on appeal must include a transcript of all evidence relevant to such finding or conclusion." Iowa R. App. P. 6.803(1). As we cannot review what we do not have, we consider the merits of the father's claims based on the record that is available to us. *See In re F.W.S*, 698 N.W.2d 134, 135 (Iowa 2005) ("The court may not speculate as to what took place or predicate error on such speculation.").

preserve error for appeal." *In re K.C.*, 660 N.W.2d 29, 38 (Iowa 2003). Because the father raises an unpreserved constitutional claim, we do not consider it. And insofar as it is necessary, we conclude the juvenile court had subject matter jurisdiction to hear and decide the termination petition. *See In re J.M.*, 832 N.W.2d 713, 719 (Iowa Ct. App. 2013) ("Only the constitution or a statute may confer subject matter jurisdiction."); *see also* Iowa Code § 232.109 ("The juvenile court shall have exclusive jurisdiction over proceedings under this chapter to terminate a parent-child relationship and all parental rights with respect to a child.").

Sticking with the idea that the juvenile court should not have decided to terminate his parental rights while his criminal appeal was still pending,[3] the father contests the statutory grounds for termination. He points out that both grounds relied upon by the juvenile court, paragraphs (f)[4] and (j)[5] of section 232.116(1),

---

[3] While the father now contends it was wrong of the juvenile court to decide the termination petition while his criminal appeal was still pending, we have not found anywhere in the record where he moved for a continuance or asked the court to delay the termination trial.

[4] The juvenile court may terminate parental rights under section 232.116(1)(f) when:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated [CINA] pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

[5] The juvenile court may terminate parental rights under section 232.116(1)(j) when:

> (1) The child has been adjudicated [CINA] pursuant to section 232.96 and custody has been transferred from the child's parents for placement pursuant to section 232.102.

contain a common element requiring that "[t]he child has been adjudicated a child in need of assistance [(CINA)] pursuant to section 232.96." *See* Iowa Code § 232.116(1)(f)(2), (j)(1). In this challenge, he claims that if the juvenile court waited until he successfully appealed his criminal convictions, then the adjudicatory ground of section 232.96A(14) would no longer persist, and the grounds for termination would not be met. *See* Iowa Code § 232.96A(14) (providing a child may be adjudicated CINA when "[t]he child's parent . . . suffers from . . . imprisonment . . . that results in the child not receiving adequate care or being imminently likely not to receive adequate care"). But the father's argument misses the mark.

First, the juvenile court did not adjudicate the children CINA pursuant to section 232.96A(14); the only ground relied on by the juvenile court for adjudication was section 232.96A(12), which allows the court to adjudicate a child when "[t]he child for good cause desires to have the child's parents relieved of the child's care and custody." Second, even if we assume the father just listed the wrong Code section in his petition on appeal, the father did not challenge the CINA adjudication when it took place. And we cannot review the validity of the past adjudication at this point. *In re J.D.B.*, 584 N.W.2d 577, 581 (Iowa Ct. App. 1998) (concluding the parent appealing the termination of their parental rights could not challenge the grounds for the CINA adjudication because the parent "did not appeal from any of the CINA proceedings and the time for appeal has passed. [The mother] cannot

---

(2) The parent . . . has been imprisoned and it is unlikely that the parent will be released from prison for a period of five or more years.

challenge deficiencies in the CINA proceedings in this appeal"). And third, if the father had challenged the CINA adjudication at the appropriate time, the pertinent question would be whether the grounds for adjudication existed *at the time of the adjudication*. The argument the father makes about his future release from prison following a successful criminal appeal might impact whether an open CINA case should be closed. Or in other words, if the father was no longer imprisoned, it might be appropriate to close a CINA case that was premised on the father's imprisonment under section 232.96A(14). *See* Iowa Code § 232.103(4). But an improvement in a parent's or family's circumstances does not retroactively invalidate an action taken by the juvenile court that was proper at the time the court took the action.

Here, because there was an active, open CINA adjudication as to both L.C. and W.C., all the elements under section 232.116(1)(f) and (j) were met at the time of the termination hearing. *See In re W.M.*, 957 N.W.2d 305, 313 (Iowa 2021) (considering whether the grounds for termination existed as of the time of the termination hearing); *see also In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022) (interpreting the requirement "the child has been adjudicated" CINA in section 232.116(1) to mean an adjudication in the present proceeding and not any previously closed cases). We agree with the juvenile court that clear and convincing evidence supports termination pursuant to section 232.116(1)(f) and (j).

Finally, the father argues the court should have concluded termination was unnecessary because it would be "detrimental to the child[ren] at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). He maintains the juvenile court should have established a guardianship in the

children's paternal grandfather rather than terminating his parental rights. *See id.* § 232.117(5) (allowing the court, after a termination trial, to not order the termination of parental rights but instead enter an order pursuant to section 232.104); *see also id.* § 232.104(2)(d)(2) (allowing the court to transfer guardianship of the child to an adult relative). For the court to establish a guardianship under section 232.104(2)(d)(2), all of the following must apply:

> a. A termination of the parent-child relationship would not be in the best interest of the child.
> b. Services were offered to the child's family to correct the situation which led to the child's removal from the home.
> c. The child cannot be returned to the child's home.

*Id.* § 232.104(4).

The father did not establish that the children are so close to him that termination of his rights would be detrimental to the children. *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) (providing the parent bears the burden to establish an exception to termination is warranted). While the children share a bond with the father, they spent much of their lives with the paternal grandfather even before the father became incarcerated and the Iowa Department of Health and Human Services became involved. Plus, the children need stability; they want and deserve to know with whom their "forever home" will be. *See id.* at 478 (agreeing with juvenile court that, in some circumstances, "a guardianship is woefully inadequate to achieve the sort of stable, nurturing and permanent home" the child needs). The paternal grandfather did not seem opposed to a guardianship, but he also expressed his willingness to adopt the children. Termination of the father's parental rights and adoption by the grandfather is in these children's best interests. *See In re C.K.*, 558 N.W.2d 170, 174 (Iowa 1997) ("An appropriate determination

8

to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child. The child's best interests always remain the first consideration.").

We affirm the termination of the father's parental rights to L.C. and W.C.

## II. L.C.'s Mother's Appeal.

The mother challenges the statutory grounds for termination, claims the loss of her rights is not in L.C.'s best interests, and the court should have concluded the close bond between the mother and L.C. precludes termination.

The juvenile court terminated the mother's parental rights under section 232.116(1)(e) and (f). "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We choose to review termination under section 232.116(1)(e), which allows the court to terminate when each of the following elements are satisfied:

> (1) The child has been adjudicated [CINA] pursuant to section 232.96.
> (2) The child has been removed from the physical custody of the child's parents for a period of at least six consecutive months.
> (3) There is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so. For the purposes of this subparagraph, "significant and meaningful contact" includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent. This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life.

The mother challenges only the third element—whether she maintained significant and meaningful contact with L.C. in the six months leading up to the termination trial.

As the mother admitted in her testimony, she made no effort to complete the responsibilities in the case permanency plan. The only contact she had with the department was when the case manager spoke to her at hearings in the CINA proceedings. The mother did not obtain a substance-use or mental-health evaluation, submit to any drug testing, engage in mental-health therapy, or allow the department into the home where she was living with her boyfriend. And the mother had visits with L.C. only sporadically, which—according to the department case manager—left the mother and L.C.'s relationship "strained and unattached." As it is defined by section 232.116(1)(e)(3), the mother failed to maintain "significant and meaningful contact." *See In re T.S.*, 868 N.W.2d 425, 436–38 (Iowa Ct. App. 2015). So, the State proved the ground for termination under section 232.116(1)(e).

The mother argues the loss of her rights is not in L.C.'s best interests. In considering L.C.'s best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). We also give some weight to the child's wishes. *See id.* § 232.116(2)(b)(2) (considering "[t]he reasonable preference of the child, if the court determines that the child has sufficient capacity to express a reasonable preference"). Here, the case manager testified that eleven-year-old L.C. "has throughout the case, regularly and almost monthly, expressed that she desires to

live with her grandfather forever." L.C. had spent much of her life—even before the department became involved—in the care of her grandfather and other adult family members. And, according to the case manager, L.C. and her half-sibling, W.C., were thriving in the grandfather's care:

> They are normal, happy, healthy children who are thriving in their environment. [The paternal grandfather] is a very hands-on and engaged grandfather who provides them with every necessary resource and service that they need. And they have both expressed their comfortability and feelings of safety and stability at [his] home consistently.
> . . . .
> . . . Both children are extremely attached to [their grandfather]. . . . It is very clear when you walk in the home that they love their grandfather and their grandfather loves them. They are affectionate towards him, hugging him, displaying those affections of love between a grandchild and their grandfather. And [L.C.] consistently expresses that he is the only thing that she felt has been around for her throughout her life.

By refusing to have any involvement with the department, the mother failed to prioritize L.C. and her needs. As the juvenile court put it, the mother "put forth very little effort into obtaining or maintaining a relationship with her daughter over the life of this case." Meanwhile, the paternal grandfather has been a stable, consistent caregiver, who L.C. can trust to be there for her. Terminating the mother's parental rights so L.C. can be adopted by the grandfather is in L.C.'s best interests.

Finally, the mother argues termination should be avoided based on the permissive exception in section 232.116(3)(c), which allows the court to forego termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." The mother did not establish that L.C. would be disadvantaged

by the termination of the mother's parental rights.  *See In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021) (concluding "the existence of a bond is not enough" to apply section 232.116(3)(c) to save the parent-child relationship).  So, application of the exception is not warranted.

We affirm the termination of the mother's parental rights to L.C.

**AFFIRMED ON BOTH APPEALS.**