**In the interest of E.D., Minor Child,**

**J.E.D., Mother, Appellant.**

**No. 11–1729.**

Court of Appeals of Iowa.

Feb. 15, 2012.

Mark Neary, Muscatine, for appellant mother.

Brian Metcalf of Metcalf, Conlon & Siering, P.L.C., Muscatine, for father.

Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney General, Alan Ostergren, County Attorney, and Kathleen Bragg, Assistant County Attorney, for appellee State.

Neva Baker, Muscatine, for intervenor.

Noelle Murray of Stein, Moore & Egerton, L.L.P., Iowa City, for minor child.

Considered by DANILSON, P.J., and TABOR and MULLINS, JJ.

DANILSON, P.J.

A mother appeals from the juvenile court's order adjudicating her daughter, four-year-old E.D., to be a child in need of assistance (CINA) and subsequent dispositional order. The mother argues the juvenile court lacked subject matter jurisdiction to issue any orders concerning the child because Tennessee was the home state of the child. Upon our review, we find the juvenile court (1) properly exercised its temporary emergency jurisdiction under the Uniform Child–Custody Jurisdiction and Enforcement Act set forth in Iowa Code chapter 598B to enter its initial removal order, but (2) was without jurisdiction to enter a subsequent adjudication or dispositional order. Accordingly, we reverse and remand for dismissal of the CINA petition; and vacate the court's order adjudicating the child to be a CINA, as well as the subsequent dispositional order.

## I. Background Facts and Proceedings.

The mother and the child moved to Iowa from Tennessee in January 2011. Less than five months later, on May 20, 2011, the juvenile court entered an emergency order to remove the child from the mother's custody, following founded reports of the mother's drug use and inadequate supervision. The juvenile court placed the child in the home of Iowa relatives, her maternal stepgreat grandparents.

On May 25, 2011, the State filed a petition alleging the child to be a CINA pursu-

ant to Iowa Code section 232.2(6)(c)(2) (2011). In the petition, the State alleged Iowa "is the home state of the child at the time of the commencement of this proceeding." Pursuant to the Uniform Child–Custody Jurisdiction and Enforcement Act (UCCJEA), enacted as Iowa Code chapter 598B, "home state" means "the state in which a child lived with a parent or a person acting as a parent for *at least six consecutive months* immediately before the commencement of a child-custody proceeding." *See* Iowa Code § 598B.102(7). On appeal, the State concedes Iowa was *not* the home state of the child at the time the petition was filed.

At the adjudication hearing on August 4, 2011, the mother's counsel emphasized the State had only alleged one jurisdictional ground in the CINA petition—"home state" status for Iowa—and had failed to prove it. In response, the State and guardian ad litem requested the juvenile court to exercise "temporary emergency jurisdiction." Iowa Code section 598B.204 of the UCCJEA provides a temporary emergency jurisdictional ground in addition to the four alternative grounds for jurisdiction listed in section 598B.201 (1)(a)–(d). That section states in part:

> A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.

Iowa Code § 598B.204(1).

On August 29, 2011, the juvenile court entered its order adjudicating the child to be a CINA pursuant to section 232.2(6)(c)(2). The court determined it had jurisdiction to hear the CINA action via the grant of temporary emergency ju-

risdiction pursuant to section 598B.204. As the court observed:

> Mother and child moved to the state of Iowa in January of 2011. They have continuously resided in Iowa since January of 2011. The Court finds it has jurisdiction pursuant to Iowa Code section 598B.204. The child is present in this state and it is necessary in an emergency to protect the child because the child has been subjected to or threatened with mistreatment or abuse as described above.

Subsequently, on October 11, 2011, the court entered a dispositional order continuing custody of the child with her maternal step-great grandparents, adopting the case plan proposed by DHS, and authorizing a home study of the mother's residence in Tennessee.

The mother appeals.

## II. Issues on Appeal.

There are two questions before us in this appeal: (1) may the juvenile court exercise subject matter jurisdiction on a ground not alleged in the CINA petition; and (2) did the juvenile court have subject matter jurisdiction to adjudicate the child as a CINA and enter a subsequent dispositional order.

## III. Scope of Review.

We conduct a de novo review of jurisdictional issues raised under UCCJEA. *See In re Guardianship of Deal–Burch,* 759 N.W.2d 341 (Iowa Ct.App. 2008). A party may challenge subject matter jurisdiction at any time. *In re Jorgensen,* 627 N.W.2d 550, 554 (Iowa 2001). If we determine subject matter jurisdiction is lacking, the only appropriate disposition is to dismiss the CINA action. *Id.* at 555.

## IV. Subject Matter Jurisdiction.

Before reaching E.D.'s complaint that the State is limited to the jurisdictional ground alleged in its petition, we first address whether the juvenile court lacked subject matter jurisdiction to enter the CINA and dispositional orders.

In 1999, the Iowa legislature adopted the Uniform Child–Custody Jurisdiction and Enforcement Act (UCCJEA), repealing and replacing the provisions of the Uniform Child Custody Jurisdiction Act (UCCJA). *See* 1999 Iowa Acts ch. 103. The UCCJEA is a jurisdictional act that includes proceedings involving the physical custody and visitation of a child as well as child-custody proceedings involving neglect and abuse. Iowa Code § 598B.102(3), (4).

The parties do not dispute the applicability of the UCCJEA to the instant proceedings. As we observed in *Stauffer v. Temperle*, 794 N.W.2d 317, 320–21 (Iowa Ct.App.2010), the "exclusive jurisdictional basis for making a child-custody determination by a court of this state," is set forth in Iowa Code section 598B.201(1), which provides:

> Except as otherwise provided in section 598B.204 [temporary emergency jurisdiction], a court of this state has jurisdiction to make an *initial child-custody determination only if* any of the following applies:
>
> a. This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.
>
> b. A court of another state does not have jurisdiction under paragraph "a", or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more

appropriate forum under section 598B.207 or 598B.208 and both of the following apply:

> (1) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.
>
> (2) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.
>
> c. All courts having jurisdiction under paragraph "a" or "b" have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under section 598B.207 or 598B.208.
>
> d. No court of any other state would have jurisdiction under the criteria specified in paragraph "a", "b", or "c".

In addition to these four grounds authorizing jurisdiction, temporary emergency jurisdiction is authorized under certain circumstances pursuant to Iowa Code section 598B.204.

### A. Temporary Order Removing the Child from the Mother's Custody.

The juvenile court entered an emergency order to remove the child from the mother's custody on May 20, 2011, following founded reports of the mother's drug use and inadequate supervision. As set forth above, section 598B.204 entitles the court to exercise temporary emergency jurisdiction over a child "present in this state," in an emergency because the child "is subjected to or threatened with mistreatment or abuse." The comments to the UCCJEA describe this jurisdictional ground as follows:

> The definition of emergency has been modified [from the UCCJA definition] to

harmonize it with the PKPA.[1] The PKPA's definition of emergency jurisdiction does not use the term "neglect." It defines an emergency as "mistreatment or abuse." Therefore "neglect" has been eliminated as a basis for the assumption of temporary emergency jurisdiction. Neglect is so elastic a concept that it could justify taking emergency jurisdiction in a wide variety of cases. Under the PKPA, if a State exercised temporary emergency jurisdiction based on a finding that the child was neglected without a finding of mistreatment or abuse, the order would not be entitled to federal enforcement in other States. Uniform Child Custody Jurisdiction and Enforcement Act (1997) § 204 cmt. Courts have interpreted this jurisdictional ground and found that "neglect or dependency of a child," including a parent's "substance abuse problems," "history of neglect," "inadequate supervision," "exposure to domestic violence," and "unresolved mental health issues," can result in the court's assumption of temporary emergency jurisdiction pursuant to section 204 of the UCCJEA as codified by state statute. See Ann K. Wooster, *Construction and Application of Uniform Child Custody Jurisdiction and Enforcement Act's Temporary Emergency Jurisdiction Provision*, 53 A.L.R.6th 419 (2010).

In this case, the child was three years old at the time and was found outside unsupervised while the mother was inside sleeping. It was discovered the mother had a significant history of drug use, criminal activity, and association with dangerous individuals, including registered sex offenders. She admitted to using drugs and taking pills "for the last 60 days," and had tested positive for marijuana in February and May 2011. Under these facts, the juvenile court properly exercised temporary emergency jurisdiction pursuant to section 598B.204 to remove the child from the mother's custody. The child was present in Iowa (but had lived in Iowa for less than six consecutive months), and was "subjected to or threatened with mistreatment or abuse," as evidenced by the mother's substance abuse, inadequate supervision, and exposure of the child to sex offenders. See Iowa Code § 598B.204.

■ However, the exercise of emergency jurisdiction only confers authority to enter temporary protective orders. The official comments to UCCJEA section 204 relating to temporary emergency jurisdiction describe the provision as "an extraordinary jurisdiction reserved for extraordinary circumstances." As the comments further provide:

This section codifies and clarifies several aspects of what has become common practice in emergency jurisdiction cases under the UCCJA and PKPA. First, a court may take jurisdiction to protect the child even though it can claim neither home State nor significant connection jurisdiction. Second, the duties of States to recognize, enforce and not modify a custody determination

---

1. The Uniform Child Custody Jurisdiction Act (UCCJA) was created in 1968 as a set of guidelines to help foster uniformity among the states with respect to child custody and enforcement laws. Iowa adopted the UCCJA in substantial form in 1977, as codified in Iowa Code chapter 598A (1977). *See Jörgensen*, 627 N.W.2d at 556. The UCCJEA, issued in 1998, revised the former UCCJA to correct several inconsistencies and provide clearer standards. In 1999, Iowa repealed Iowa Code chapter 598A and adopted the UCCJEA, as currently codified in Iowa Code chapter 598B. The UCCJEA recognizes and harmonizes with the Parental Kidnapping Prevention Act (PKPA), enacted in 1980 by the federal government, which allows one state to honor and enforce the custody determinations of another state.

of another State do not take precedence over the need to enter a temporary emergency order to protect the child.

Third, a custody determination made under the emergency jurisdiction provisions of this section is a temporary order. The purpose of the order is to protect the child until the State that has jurisdiction under Sections 201–203 enters an order.

Uniform Child Custody Jurisdiction and Enforcement Act (1997) § 204 cmt. Further, as the preface to the UCCJEA explains:

There [were] several problems with the ... emergency jurisdiction provision of the UCCJA § 3(a)(3). First, the language of the UCCJA does not specify that emergency jurisdiction may be exercised only to protect the child on a temporary basis until the court with appropriate jurisdiction issues a permanent order. Some courts have interpreted the UCCJA language to so provide. Other courts, however, have held that there is no time limit on a custody determination based on emergency jurisdiction. Simultaneous proceedings and conflicting custody orders have resulted from these different interpretations.

Uniform Child Custody Jurisdiction and Enforcement Act (1997) prefatory note; *see In re Jorge G.,* 164 Cal.App.4th 125, 78 Cal.Rptr.3d 552, 558 (2008) (concluding an assumption of emergency jurisdiction does not confer upon the state exercising emergency jurisdiction the authority to make a permanent custody disposition); *In re D.N.H.W.,* 955 So.2d 1236, 1239 (Fla.Dist. Ct.App.2007) (finding temporary emergency jurisdiction under the UCCJEA does not confer authority to make an initial custody determination as a temporary custody order only remains in effect until an order is obtained from the court having

proper jurisdiction); *In re L.W.,* 241 Neb. 84, 486 N.W.2d 486, 498 (1992) (observing under the UCCJA juvenile court is entitled to exercise temporary jurisdiction over the child under the emergency provision, but only has power to grant temporary orders where the record does not support finding that the first state had declined jurisdiction or had failed to take appropriate action); *In re Van Kooten,* 126 N.C.App. 764, 487 S.E.2d 160, 163 (1997) (determining under the UCCJA, "In the absence of a previous custody decree from another state which has continuing jurisdiction, any orders entered pursuant to the exercise of emergency jurisdiction shall be temporary pending application to any state having either 'home state' or 'significant connection' jurisdiction."); *In re A.L.H.,* 160 Vt. 410, 630 A.2d 1288, 1291 (1993) ("Virtually all courts that have addressed the issue have concluded that jurisdiction under the UCCJA's emergency provision, particularly in cases such as this where the abuse is reported to have occurred in another state, does not authorize courts to make permanent custody determinations.").

Upon this authority, we conclude the juvenile court's entry of the order adjudicating E.D. a CINA, and the subsequent dispositional order, could not be premised upon the grant of temporary emergency jurisdiction provided in section 598B.204(1).

### B. Jurisdiction as the Home State.

As previously noted, the State concedes that Iowa was not the home state at the time of the commencement of the CINA action. "Home state" is defined as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding." Iowa Code § 598B.102(7). A child's home state is determined from the

date proceedings are commenced. *See* Iowa Code §§ 598B.102(5), 598B.201(1). Here, the CINA action was initiated on May 25, 2011, and the child first resided in Iowa with her mother sometime in January of the same year. Consequently, the juvenile court could not have assumed jurisdiction under the jurisdictional grant in section 598B.201(1)(a), as that provision only authorizes jurisdiction if Iowa is the home state at the time of commencement of the proceedings.

### C. Jurisdiction under Iowa Code section 598B.204(2).

■ A court that has exercised temporary emergency jurisdiction can become the child's home state under certain circumstances. Iowa Code section 598B.204(2) provides:

> If a child-custody proceeding has not been or is not commenced in a court of a state having jurisdiction under sections 598B.201 through 598B.203, a child-custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child.

One of the difficulties of this provision for the trial court is determining if a child-custody proceeding has been commenced or will be commenced in another state.

The UCCJEA imposes various duties upon the parties and the court, such as communicating with another state to determine if other proceedings have been filed in other states. *See* Iowa Code § 598B.204(4). Specifically, we observe that section 598B.204(4) requires a court "which has been asked to make a child-custody determination" under the temporary emergency jurisdiction provision, "upon being informed that a child-custody proceeding has been commenced in, or a child-custody determination has been made by, a court of a state having jurisdiction under sections 598B.201 through 598B.203, *to immediately communicate with the other court.*" *Id.* (emphasis added). We also note that section 598B.209(1) requires each party to a child-custody proceeding to file a jurisdictional affidavit that identifies, among other facts, the child's residence during the last five years and any proceedings that that could affect the current proceeding. Iowa Code § 598B.209(1). If the information is not furnished, "the court, upon motion of a party or its own motion, may stay the proceeding until the information is furnished."[2] Iowa Code § 598B.209(2).

Here, only the State filed such an affidavit. The State's affidavit reflects the State was unaware of any other proceedings, and in respect to the child's addresses within the last five years, cursorily noted: "500 Lorenz St., Muscatine, Iowa 52761 unknown addresses in Tennessee." The record also reflects that the parties did not dispute that E.D. had not lived in Iowa for six months and had previously lived in Tennessee. Without the benefit of a jurisdictional affidavit from the mother and

---

**2.** As noted by one authority, the UCCJEA pleading requirements are significant and must be strictly followed:

> The pleading rules of the UCCJEA require a person seeking a temporary emergency order to inform the court of any proceeding concerning the child that has been commenced elsewhere. The person commencing the custody proceeding in a state with appropriate jurisdiction is required to inform the court about the temporary emergency proceeding. These pleading requirements need to be strictly followed so that the courts are able to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order.

Robert G. Spector, *International Child Custody Jurisdiction and the Uniform Child Custody Jurisdiction and Enforcement Act,* 33 N.Y.U.J. Int'l L. & Pol. 251, 275 (Fall 2000).

knowledge that Iowa was not E.D.'s home state, the court could have entered a stay order until an affidavit was filed pursuant to section 598B.209(2), although such an affidavit may not have fully resolved the court's dilemma.

■■■ Juvenile courts have the duty to determine the existence of subject matter jurisdiction. *See State v. Lasley,* 705 N.W.2d 481, 485–486 (Iowa 2005). As our supreme court has instructed:

> The general theme of Iowa cases provides that, when a court is confronted of its own authority to proceed, it should take charge of the proceedings affirmatively, regardless of the vehicle used to raise the issue. The court should utilize the most efficient method at its disposal to determine the true facts and then decide the issue promptly. When the court's power to proceed is at issue, the court has the power and duty to determine whether it has jurisdiction of the matter presented. Subject matter jurisdiction should be considered before the court looks at other matters involved in the case and before it determines whether the parties are entitled to a ... trial. The court should be less concerned about the form in which the question of subject matter jurisdiction reaches it and more concerned about establishing

an efficient, prompt, trustworthy solution, even if innovative and unusual approaches are required to reach the issue.

*Id.* at 486 (quoting *Lansky by Brill v. Lansky,* 449 N.W.2d 367, 368 (Iowa 1989)). In addition, appellate courts can "determine subject matter jurisdiction issues even though the parties have not raised them." *Jorgensen,* 627 N.W.2d at 555.

Here, as the court's jurisdiction was temporary in nature, the court had the authority to "immediately communicate with the other court [Tennessee]," to determine whether a custody order was entered or pending in that state, and in order "to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order." Iowa Code § 598B.204(4).[3] However, when as here, the child's home state is not Iowa, and the court is not informed of any other proceedings, Iowa Code chapter 598B does not specifically require the court or the parties to communicate with the home state.

■■■ Under these circumstances, the better practice is for the court itself to make this communication to clarify jurisdiction before proceeding, and ensure there are not two competing orders or actions.[4] Here, we find no evidence in the

---

3. As one authority has observed:

> The UCCJEA provides for one temporary concurrent basis of jurisdiction: in the case of an emergency. An emergency occurs when a child is abandoned in the state or when the child, a sibling of the child, or a parent of the child is threatened with mistreatment or abuse. The concurrent nature of the jurisdiction means that a court may take cognizance of the case to protect the child even though it can claim neither home state nor significant connection jurisdiction. The duties of states to recognize, enforce, and not modify a custody determination of another state do not take precedence over the need to enter a temporary emergency order to protect the child.

> However, a custody determination made under the emergency jurisdiction provisions must be a temporary order. The purpose of the emergency temporary order is to protect the child until the state that appropriately has jurisdiction under the original jurisdiction provisions or the continuing jurisdiction provisions is able to enter an order to resolve the emergency.

Spector, 33 N.Y.U.J. Int'l L. & Pol. at 272–73.

4. "Communication is authorized ... whenever the court finds it would be helpful." Uniform Child Custody Jurisdiction and Enforcement Act (1997) § 110 cmt.; *see* Iowa Code § 598B.110(1).

record that such communication to Tennessee was made by the court or by the parties, or any order ever obtained from Tennessee.[5] If there had been communication and an order received from Tennessee that it declined jurisdiction, subject matter jurisdiction would have existed pursuant to section 598B.201(1)(b).

■ Moreover, before the temporary emergency order could become a final child custody determination pursuant to section 598B.204(2), it must be established that there is not a child-custody proceeding already commenced in Tennessee. Under the facts of this case and by the lack of evidence in the record, we are reluctant to conclude there was no pending action in Tennessee and Tennessee was not intending to initiate such an action.[6]

Even if we could properly reach that conclusion, the temporary emergency order must provide that it becomes a final determination if no such actions exist or are pending. Iowa Code § 598B.204(2) ("[A] child-custody determination made under this section becomes a final determination, *if it so provides* and this state becomes the home state of the child.") (emphasis added). Our review of the emergency removal order reflects that the order did not so provide.

Further, even if the temporary emergency order had included such a provision, Iowa could only become the home state after the expiration of six months, as "home state" status requires the passage of six months. Iowa Code § 598B.102(7). This interpretation of section 598B.204(2)

is consistent with the intent of the UCCJEA:

> Under certain circumstances, however, [the temporary emergency jurisdiction provision] provides that an emergency custody determination may become a final custody determination. If there is no existing custody determination, and no custody proceeding is filed in a State with jurisdiction under Sections 201–203, an emergency custody determination made under this section becomes a final determination, *if it so provides, when the State that issues the order becomes the home state of the child.*

Uniform Child Custody Jurisdiction and Enforcement Act (1997) § 204 cmt. (emphasis added).

These comments suggest that the intent of the UCCJEA was not for the state to immediately assume "home state" status under the temporary emergency provision.[7] To reach the conclusion that Iowa immediately assumes home state status would run afoul of the definition of the term "home state" as provided in section 598B.102(7). Instead, this provision allows an order to become a final determination, as opposed to a temporary order, although it preceded home state status so long as the state ultimately becomes the home state. Because the temporary emergency order entered in this action did not specify that it may become the final child-custody determination, and six months had not yet passed to permit Iowa's jurisdiction to rip-

---

**5.** A record should be made of any such communication. *See* Iowa Code § 598B.110(4).

**6.** There is no jurisdiction other than temporary emergency jurisdiction where the record reflects that the other state was not contacted to determine if it would decline jurisdiction. *See Umina v. Malbica,* 27 Mass.App.Ct. 351, 538 N.E.2d 53, 58 (1989).

**7.** Even where the parent is no longer in the state, the six month period includes the time when the child is in the state either with a parent or a person acting as a parent. Iowa Code § 598B.102(7).

en into "home state" status, the juvenile court was without subject matter jurisdiction under section 598B.204(2).

### D. Jurisdictional Allegations set forth in the Petition.

Inasmuch as we have concluded that the juvenile court lacked subject matter jurisdiction to hear the CINA action, it is unnecessary to resolve the mother's issue of whether the court's jurisdiction is limited by the allegation of jurisdiction in the petition.

### V. Conclusion.

The State filed its petition alleging the child to be a CINA on May 25, 2011. It is undisputed Iowa was not the home state of the child at the time the petition was filed. Further, Tennessee had not declined to exercise its home state jurisdiction to the child. Accordingly, the juvenile court's adjudication was beyond its temporary authority and therefore in error.

We reverse and remand and upon remand the court shall enter an order dismissing the CINA petition. We also vacate the order adjudicating the child as a CINA, as well as the subsequent dispositional order.[8] The emergency temporary order shall remain in effect pursuant to section 598B.204, for a period of sixty days from the filing of the procedendo in this case. On remand, the juvenile court may contact the Tennessee courts to determine if that state is willing to exercise jurisdiction in this case. If Tennessee is willing to exercise jurisdiction, the juvenile court must defer to the exercise of that jurisdiction and transfer this case to Tennessee for further proceedings. If Tennessee declines to exercise jurisdiction, the juvenile court may proceed to exercise of jurisdic-

tion in any newly filed CINA proceedings pursuant to section 598B.201(1)(b).

**REVERSED IN PART, VACATED IN PART, AND REMANDED.**

---

8. In an abundance of caution, we vacate the order adjudicating the child a CINA and the dispositional order notwithstanding the dismissal of the CINA petition, so that other state courts do not perceive these orders to be initial child-custody determinations.