# IN THE COURT OF APPEALS OF IOWA

No. 19-1183
Filed November 6, 2019

**IN THE INTEREST OF R.A.,**
**Minor Child,**

**A.G., Mother,**
　　Appellant,

**B.O., Father,**
　　Appellant.
_____

　　Appeal from the Iowa District Court for Johnson County, Jason A. Burns, District Associate Judge.

　　The mother and father separately appeal the termination of their parental rights to their child. **AFFIRMED ON BOTH APPEALS.**

　　Robin L. Miller, Cedar Rapids, for appellant mother.

　　Don W. Schroeder, Iowa City, for appellant father.

　　Thomas J. Miller, Attorney General, and Anna T. Stoeffler (until withdrawal) and Mary A. Triick, Assistant Attorneys General, for appellee State.

　　Anthony A. Haughton of Linn County Advocate, Inc., Cedar Rapids, attorney and guardian ad litem for minor child.

　　Considered by Potterfield, P.J., Greer, J., and Blane, S.J.*

　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**BLANE, Senior Judge.**

The mother and father separately appeal the termination of their parental rights to their child, R.A. Neither contests the juvenile court's determination that the statutory grounds for termination were met, the best interests of the child support termination, and no permissive factor to save the parent-child relationship applies. *See* Iowa Code § 232.116(1), (2), (3) (2019). Both parents challenge whether the juvenile court had subject-matter jurisdiction to adjudicate the child in need of assistance (CINA) and ultimately terminate their parental rights.

**I. Background Facts and Proceedings.**

R.A. was born in 2010 in the state of New York. The mother, father, and R.A. remained in New York for a short while. New York's Child Protective Services became involved with the family in June 2011 and allegations were substantiated for maltreatment based on specific and repeated incidents of violence between R.A.'s parents in the presence of R.A. The father was detained and eventually deported to his home country of Ghana.

Sometime in 2012, R.A. and her mother moved to Hawaii. In the fall of 2012, Hawaii entered a divorce decree, ending the marriage of R.A.'s mother and father and giving the mother physical care of R.A.

Then, in 2013, Hawaii opened a child-welfare case involving R.A. and her mother.[1] R.A. was in foster care for a little over a year and remained under the jurisdiction of Hawaii's family court until April 2017, when the case was dismissed

---

[1] R.A. has an older half-brother who was born in Hawaii (before the mother moved to New York) and who was also initially part of the child-welfare case in 2013. From the record before us, it appears the brother remains in Hawaii in the care of his biological father.

because the mother had fled the jurisdiction—where she had outstanding warrants for her arrest—and R.A. was no longer in the state.

From June 2015 until June 2017, R.A. lived with her father in Ghana. R.A. has reported she was physically abused by her father during this time. As far as we are aware, the father remains in Ghana with his extended family.

In June 2017, R.A. moved from Ghana to the United States Virgin Islands, where the mother had been living for some time. Then, due to her outstanding warrants in Hawaii, the mother was arrested on December 23, 2017.

After the mother's arrest, the mother's husband—R.A.'s stepfather—brought R.A. to Iowa, where several members of the mother's family reside. According to reports from the family, R.A. arrived in Iowa on January 1, 2018. It seems the stepfather left Iowa after dropping R.A. off; he has not taken part in any proceedings and did not respond to DHS's attempts to make contact.

A few weeks later, the maternal relatives contacted the Iowa Department of Human Services (DHS) and reported they were unable to continue caring for R.A. By that time, the mother had been extradited to Hawaii. The juvenile court exercised emergency jurisdiction and placed R.A. in DHS's custody.

On January 25, the State filed a petition asking the court to adjudicate R.A. a CINA. The State noted the court had emergency jurisdiction but that it was unclear whether the court had subject matter jurisdiction pursuant to the Uniform Child Custody Jurisdiction Enforcement Act (UCCJEA) and Iowa Code chapter 598B. At the time, neither DHS nor the court had much information about R.A.'s whereabouts before she arrived in Iowa.

The initial CINA-adjudication hearing had to be postponed to give the State more time to determine where and with whom R.A. had lived before she arrived in Iowa. In March, the court granted the State's request directing the mother to file a jurisdictional affidavit; the court stayed the CINA proceedings until further proceedings regarding jurisdiction could be held.

In April, the mother reported to the court that she was en route to the United States Virgin Islands after having been released from jail in Hawaii. She indicated she intended to maintain her home in the Virgin Islands and wanted R.A. to be returned to her care there.

The court denied the mother's request to participate by phone in the June hearing regarding jurisdiction, reasoning the court was at a disadvantage in determining her credibility if it was unable to observe the mother and because, if the court did as the mother asked and dismissed the CINA petition, the mother would need to be present to take custody of R.A. Following the conclusion of the hearing, the court filed an order listing the specific information it still needed in order to make a jurisdiction determination. The CINA proceedings remained stayed.

At a July 16 hearing, the court noted the mother was again not present and had yet to appear in Iowa during the proceedings. Additionally, the court was informed the mother was on supervised release in Hawaii when she returned to the Virgin Islands in April—again fleeing Hawaii's jurisdiction. Due to the mother's failure to appear for sentencing earlier in the month, another arrest warrant had issued for her in Hawaii. The State informed the court R.A. had significant family

residing in Iowa, including her maternal grandparents, a maternal aunt and uncle, and two brothers.

Following the hearing, the court entered a ruling finding it had the authority to make an "initial-child custody determination" under section 598B.201. The court reasoned, "Specifically, the child has resided in this State for at least six months, having arrived on January 1, 2018. As such, Iowa may be considered her 'home state' under Iowa Code [section] 598B.102(7) as she has been residing with people or entities acting as her parents since her arrival." Additionally, the court stated:

> Furthermore, the court finds it has jurisdiction to modify custodial determinations under Iowa Code [section] 598B.203, as this court has determined that the child's parents do not currently reside in Hawaii, the state which may have had original jurisdiction over this child. Further, this court determines that the child and the child's parents do not reside in Hawaii. . . . The child resides in Iowa where she has extensive familial contacts.

Once the court determined it had jurisdiction, it adjudicated R.A. a CINA pursuant to Iowa Code section 232.2(6)(a), (c)(2), (j), and (n).

The State filed a petition to terminate the mother's and father's parental rights, and the hearing came on in May 2019. The mother participated by telephone; the father did not participate. The mother testified she was living in Paris, France, and had been for approximately ten months. This was the first time she told anyone connected with the case that she was not in the Virgin Islands. The mother conceded she was not in Iowa for the proceedings and would not come to the state because of her outstanding arrest warrants in Hawaii.

In July, the court entered a ruling reiterating its conclusion the court had subject matter jurisdiction. It terminated both the mother's and the father's parental rights. Both parents appeal.

**II. Discussion.**

Neither the mother nor the father challenge the juvenile court's exercise of emergency jurisdiction to place R.A. in the custody of DHS. *See* Iowa Code § 598B.204(1) (allowing the court to exercise emergency jurisdiction over the child when "the child is present in this state and the child has been abandoned"). "However, the exercise of emergency jurisdiction only confers authority to enter temporary protective orders."[2] *In re E.D.*, 812 N.W.2d 712, 717 (Iowa Ct. App. 2012). "A court cannot premise a subsequent child in need of assistance adjudication and dispositional order on section 598B.204(1) alone." *In re J.M.*, 832 N.W.2d 713, 720 (Iowa Ct. App. 2013).

Both parents challenge whether the court correctly determined it had subject matter jurisdiction under the UCCJEA, allowing the court to enter final orders adjudicating R.A. a CINA and terminating the parental rights of the parents. "A party may challenge subject matter jurisdiction at any time." *E.D.*, 812 N.W.2d at 715. "We conduct a de novo review of jurisdictional issues raised under UCCJEA." *Id.* Iowa Code section 598B.201(1) provides "the exclusive jurisdictional basis for making a child-custody determination." Iowa Code § 598B.201(2). It provides:

---

[2] The record establishes that Hawaii entered a dissolution decree giving the mother physical care of R.A. and also entered an order removing R.A. from the mother's care. Pursuant to Iowa Code section 598B.204(4), "the better practice is for the court" to communicate with Hawaii "to clarify jurisdiction before proceeding, and ensure there are not two competing orders or actions." *E.D.*, 812 N.W.2d at 720. Moreover, communication is provided for and encouraged by the UCCJEA. *See* Iowa Code § 598B.110(1) ("A court of this state may communicate with a court in another state concerning a proceeding arising under this chapter."). From the record of the proceedings on jurisdiction, the juvenile court contemplated contacting Hawaii, but it does not appear the court ever did so.

1. Except as otherwise provided in section 598B.204, a court of this state has jurisdiction to make an initial child-custody determination only if any of the following applies:

a. This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.

b. A court of another state does not have jurisdiction under paragraph "a", or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under section 598B.207 or 598B.208 and both of the following apply:

(1) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.

(2) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

c. All courts having jurisdiction under paragraph "a" or "b" have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under section 598B.207 or 598B.208.

d. No court of any other state would have jurisdiction under the criteria specified in paragraph "a", "b", or "c".

Iowa Code § 598B.201(1).

Here, the juvenile court incorrectly determined it had subject matter jurisdiction under section 598B.201(1)(a), finding Iowa had become R.A.'s home state due to her living in the state for more than six months at the time the juvenile court made the determination in July 2019. But "home state" is defined as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months *immediately before the commencement of a child-custody proceeding.*" Iowa Code § 598B.102(7) (emphasis added). At the time the CINA proceeding commenced on January 25, R.A. had been living in Iowa only twenty-five days. *See E.D.*, 812 N.W.2d at 718–19 (stating, "A child's home state is determined from the date proceedings are commenced" and using the date the

CINA petition was filed as the commencement of the CINA action). On January 25, no state was R.A.'s home state under the statutory definition, as she spent the first five months before the initiation of the proceeding in the United States Virgin Islands with her mother and the final one month in Iowa in the care of other family members. *See In re L.H.*, No. 19-0690, 2019 WL 4678209, at *2 (Iowa Ct. App. Sept. 25, 2019) (noting neither Iowa nor the former state of the child met the definition of "home state"); *see also* Iowa Code § 598B.102(15) ("'State' means a state of the United States, the District of Columbia, Puerto Rico, the United States Virgin Islands, or any territory or insular possession subject to the jurisdiction of the United States.").

"Home state" jurisdiction also exists in a state that was the child's home state within six months before the start of the child-custody proceedings so long as a parent continues to live in that home state. *See* Iowa Code § 598B.204(1)(a). The United States Virgin Islands was R.A.'s home state before she came to Iowa; she lived there with her mother from sometime in June 2017 until she was brought to Iowa on January 1, 2018—just slightly more than six months—but at the time the CINA proceedings commenced, the mother was no longer living there, as she had been extradited to Hawaii.

Because no state has home state jurisdiction under section 598B.201(1)(a), Iowa may exercise jurisdiction if (1) "[t]he child and the child's parents, or the child and at least one parent or a person acting as parent, have a significant connection with this state other than mere physical presence" and (2) "[s]ubstantial evidence is available in this state concerning the child's care, protection, training, and personal relationships." *See* Iowa Code § 598B.201(1)(b)(1)–(2).

We believe these jurisdictional grounds are met. The mother and R.A. have significant family connections in Iowa, including R.A.'s maternal grandparents, a maternal aunt and uncle, and two brothers. It appears to be these strong family ties that led the stepfather to bring R.A. to Iowa once her mother was arrested in the Virgin Islands. Additionally, R.A. was enrolled in school in Iowa and seeing mental-health professionals in Iowa. Although R.A.'s maternal relatives were unable to be her full-time caregivers, she was having visits with them on a regular basis. Information regarding R.A.'s care, protection, training, and personal relationships is available in Iowa. *See, e.g.*, *In re Wechel*, No. 02-0826, 2003 WL 118614, at *2 (Iowa Ct. App. Jan. 15, 2003) (finding there was substantial evidence in Iowa concerning the child's care, protection, training, and personal relationships where the child had family in Iowa, was enrolled in daycare in Iowa, and had medical appointments in the state).

Under these circumstances, we conclude Iowa has jurisdiction under section 598B.201(1)(b). Because neither parent has otherwise challenged the merits of the termination of their parental rights, we affirm.

**AFFIRMED ON BOTH APPEALS.**