# IN THE COURT OF APPEALS OF IOWA

No. 25-2161
Filed April 1, 2026

**In the Interest of H.C., Minor Child,**

**H.G., Mother,**
Appellant.

Appeal from the Iowa District Court for Scott County,
The Honorable Cheryl Traum, Judge.

**AFFIRMED**

G. Brian Weiler, Davenport, attorney for appellant mother.

Brenna Bird, Attorney General, and Michelle R. Becker, Assistant Attorney General, attorneys for appellee State.

Jean Capdevila, Davenport, attorney and guardian ad litem for minor child.

Considered without oral argument
by Tabor, C.J., and Badding and Langholz, JJ.
Opinion by Tabor, C.J.

**TABOR, Chief Judge.**

A young mother, Harmony, appeals the dispositional order continuing the removal of her three-month-old daughter, H.C., from her custody. She contends the Iowa juvenile court lacked jurisdiction over the child and challenges the removal, child-in-need-of-assistance (CINA) adjudication, and dispositional orders. Harmony also argues that the Iowa Department of Health and Human Services failed to make reasonable efforts to prevent the removal. Because we find the court properly exercised its jurisdiction and there are no grounds to reverse the juvenile court's order, we affirm.[1]

Seventeen-year-old Harmony has three children.[2] The first, born in 2023, died when he was eight months old. That infant and the parents were living with Harmony's mother, Rachel, in Illinois. Although his cause of death was undetermined, the infant had healing rib fractures, and the Illinois child-welfare agency found the child abuse report against the parents "indicated" that he suffered "death by neglect."

Harmony gave birth to her second child, A.M., in 2024 while she and the father were living in Davenport. Because of domestic violence in their household, the Iowa juvenile court ordered that A.M. be removed from the parents' custody at five weeks old; the department placed him in foster care. During A.M.'s CINA proceedings, Harmony did not disclose to the

---

[1] We review CINA proceedings de novo. *In re A.J.*, 821 N.W.2d 280, 282 (Iowa Ct. App. 2012). We also review jurisdictional issues raised under the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA) de novo. *In re E.D.*, 812 N.W.2d 712, 715 (Iowa Ct. App. 2012); *see* Iowa Code chapter 598B (2025). We give the juvenile court's findings of fact weight, especially regarding witness credibility, but they do not bind us. *In re A.H.*, 950 N.W.2d 27, 33 (Iowa Ct. App. 2020).

[2] The father of the children is not involved in this appeal.

department or her mother that she was pregnant again and going to Illinois for prenatal care. In fact, she lied when asked if she was pregnant.

Harmony gave birth to H.C., her third child, at a hospital in Sterling, Illinois. The plan was for the newborn to live with Rachel, under a voluntary guardianship, according to Harmony's testimony. But the State petitioned for an ex parte removal of H.C. from Harmony's custody in Scott County. The Iowa juvenile court granted the petition, and the department removed H.C. from Harmony's custody at the Illinois hospital, placing her with the same foster family who was caring for A.M.

After a hearing, the court affirmed the removal. In that order, the court found that Iowa was H.C.'s home state and it had jurisdiction over the case. In a post-hearing motion, Harmony asked the court to find that she intended to place H.C. in a guardianship with Rachel as soon as they left the hospital, there were no safety risks associated with that placement, and the department did not have grounds to remove H.C. from Rachel's custody.

The court heard argument on that motion at the adjudication hearing. In its adjudication order, the court reaffirmed that it had jurisdiction,[3] and that the State proved the grounds for adjudication. The court also ordered

---

[3] The court said: "The Court has jurisdiction of the parties and the subject matter herein. Service and notice was provided by the parents signing a notice of service and receipt of petition on September 9, 2025. In addition, the parents appeared and submitted to the jurisdiction of this Court." But the UCCJEA confers subject matter jurisdiction, which parties cannot waive by appearance or consent. *In re Jorgensen*, 627 N.W.2d 550, 554–55 (Iowa 2001) (citing the Uniform Child-Custody Jurisdiction Act (UCCJA), codified at Iowa Code chapter 598A.1 (1997), repealed and replaced by the UCCJEA in 1999); *accord E.D.*, 812 N.W.2d at 715–16 (referring to the UCCJEA, codified at Iowa Code chapter 598B); *cf. In re Guardianship of Cerven*, 334 N.W.2d 337, 339 (Iowa Ct. App. 1983) (holding personal jurisdiction can be conferred by consent of the parties through appearance and participation in the proceedings).

the department to set up a jurisdictional hearing "with a judge from the appropriate county in Illinois."

At that telephonic hearing, the Iowa court heard from the judge who would have presided over the child-welfare proceeding in Illinois. The Illinois judge declined to exercise jurisdiction, finding that H.C. had more significant connections to Iowa. So the Iowa juvenile court found that Iowa was the appropriate forum under Iowa Code section 598B.201(1)(b) and (c).

The next day, the court held a dispositional hearing where Harmony reiterated her argument that removal was from Rachel as legal custodian. Relatedly, Harmony asserted that the Iowa court's jurisdiction would have to extend "not over the [child's] mother, but over the voluntary placement and that home." Rachel also testified that she and her paramour had moved to Davenport to facilitate placement of A.M. and H.C. with them. The court entered a dispositional order finding it had jurisdiction because the Illinois court "declined jurisdiction of the child and found that Iowa is the more appropriate forum." The court also affirmed the removal of H.C. from the parents and the adjudication grounds.[4]

Harmony appeals.

*Jurisdiction.* We address jurisdiction first.[5] Under the UCCJEA, Iowa courts have "jurisdiction to make an initial child-custody determination"

---

[4] At the adjudication hearing, the court took judicial notice of A.M.'s CINA file.

[5] We agree with the State that Harmony's petition on appeal cites no authority for her contention that Iowa courts lack jurisdiction over H.C. *See In re D.M.*, 965 N.W.2d 475, 480 n.2 (Iowa 2021). But we address the question because "jurisdictional requirements are mandatory, not discretionary. . . . If the court lacks subject matter jurisdiction, it is without authority to hear the case and must dismiss the petition." *In re B.C.*, 845 N.W.2d 77, 79 (Iowa Ct. App. 2014) (cleaned up).

under four scenarios. *See* Iowa Code § 598B.201(1)(a)–(d). We elect to resolve jurisdiction on the third scenario. *See In re N.N.*, No. 99-1488, 2000 WL 1027558, at *2–3 (Iowa Ct. App. July 26, 2000) (bypassing father's contention that Iowa was not the child's home state and finding the Iowa court properly exercised jurisdiction under alternative grounds provided in the UCCJA, Iowa Code section 598A.3(d)).

Moving to that ground, Iowa courts have jurisdiction if "[a]ll courts having jurisdiction under [scenarios one and two] have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under section 589B.207 or 598B.208." Iowa Code § 598B.201(c). Sections 589B.207 and .208 set out factors for when a court determines it is an inconvenient forum. Illinois and Iowa are the only states that could have jurisdiction under the first two scenarios because they are the only states where Harmony has lived or where the child had been physically present. *See, e.g.*, 750 Ill. Comp. Stat. 36/204 (2025) (providing Illinois courts temporary emergency jurisdiction of child present in the state); Iowa Code § 598B.204 (Iowa's analogous provision).

At the jurisdictional hearing, the Illinois court stated its rationale for declining jurisdiction: the mother "is residing in Iowa" and "there's already an open CINA case with another [sibling] . . . which would mean . . . Iowa's court services and Iowa's child protective services are involved." That

---

Harmony also contends that the ex parte jurisdictional hearing violated her due process rights and that the court erred by holding the jurisdictional hearing after removal and adjudication, stating, "[ J]urisdiction cannot be a post hoc determination." We don't see where Harmony preserved error on the due process argument, nor does she cite any authority for either claim. The timing of the hearing isn't important here because subject matter jurisdiction can be raised at any time. *Id*. Harmony didn't raise it until the adjudication hearing, and the court promptly set a hearing.

determination is consistent with the factors for inconvenient forum set out in Iowa Code section 598B.207(2). *See* Iowa Code § 598B.201(c) (referencing *id.* § 598B.207 and .208). Thus, the Iowa juvenile court correctly determined that Illinois "declined to exercise jurisdiction on the ground that [Iowa] is the more appropriate forum to determine the custody of the child," under section 598B.201(c). The court properly exercised its jurisdiction of H.C.[6]

*Merits*. We now address Harmony's remaining claims. First, she challenges the removal, the finding of an imminent risk of harm, and the department's efforts to prevent removal. She maintains that H.C. was "placed with the grandmother," and the department had no safety concerns

---

[6] The State's response to the petition on appeal points out that the "mother's jurisdictional argument centers on H.C.'s maternal grandmother . . . , and on the contention that the juvenile court must have jurisdiction over the maternal grandmother." But the court exercises its jurisdiction to enter a custody determination for the child.

True, the location of the parent or "person acting as a parent" is relevant to the "home state" determination if that is how the court derives its jurisdiction. Iowa Code § 598B.102(7). But under the UCCJEA, a "person acting as a parent" means someone other than the parent who both "has physical custody of the child or has had physical custody for a period of six consecutive months" and "has been awarded legal custody by a court or claims a right to legal custody under the law of this state." *Id.* § 598B.102(13). Rachel doesn't meet that definition. So we agree with the State that Harmony's plan to have Rachel assume custody of the infant after her discharge from the hospital is of no legal significance to the jurisdiction question.

Harmony further contends the Illinois court mistakenly believed Rachel lived in Iowa at all relevant times when she lived in Illinois at the time of removal. We disagree with that characterization of the Illinois court's statement; the court explained that no guardianship had been created in Illinois and any such proceeding would be "in the state of Iowa as well." To the extent it impacts other questions, the child was removed from Harmony's legal custody while they were still in the hospital, and Rachel had neither legal nor de facto custody of the child. The juvenile court also disbelieved that Harmony planned for a guardianship with Rachel since she didn't tell Rachel she was pregnant until two weeks before H.C. was born.

about Rachel's care. We agree with the State that those issues were moot after the court entered its dispositional order. *See In re M.P.*, No. 25-1311, 2025 WL 3022811, at *3 (Iowa Ct. App. Oct. 29, 2025) (citing *In re A.M.H.*, 516 N.W.2d 867, 871 (Iowa 1994)).

Next, Harmony challenges the grounds for the adjudication and continuing removal. The court adjudicated H.C. as a CINA under Iowa Code section 232.96A(3)(b).[7] The State must prove the grounds by clear and convincing evidence. Iowa Code § 232.96(2). Under paragraph (3)(b), the court may adjudicate if "[t]he child has suffered or is imminently likely to suffer harmful effects as a result of . . . [t]he failure of the child's parent, guardian, custodian, or other member of the household in which the child resides to exercise a reasonable degree of care in supervising the child." On this record, the State met its burden.

The department worried about Harmony's dishonesty and lack of accountability. When she had her first child in her early teens, she gave inaccurate accounts of his death and did not explain how the baby's ribs were broken. And during the CINA proceedings for A.M., her second child, she wasn't truthful about her third pregnancy, even when she was asked directly.

---

[7] The court also adjudicated H.C. as a CINA under Iowa Code section 232.96A(7) and (14). For these grounds, Harmony argues that the State failed to offer evidence concerning the grandmother, Rachel, with whom Harmony allegedly planned to place the baby. But Rachel was never appointed as H.C.'s guardian. By not contesting these grounds for adjudication concerning her own conduct, Harmony has waived her challenge to these alternative bases for the CINA adjudication. *Cf. In re G.N.*, No. 20-1128, 2020 WL 7022388, at *1 (Iowa Ct. App. Nov. 30, 2020) (affirming termination of parental rights based on unchallenged statutory grounds and collecting cases doing the same). Thus, we also affirm on these grounds.

Harmony also misled the department about her relationship with the father and their volatile interactions. A.M. was removed from her care after she assaulted the father in a bed where A.M. was also sleeping. After the removal, concerns about domestic violence in the home continued. The department's reports show Harmony has a long history of mental-health concerns, has been involuntarily committed eleven times, and only intermittently engaged in the therapy that was ordered.

Beyond the concerns for her credibility and mental health, case workers did not believe that Harmony could safely parent H.C., much less H.C. and A.M. together. Visits have been fully supervised. And Harmony has struggled to implement parenting lessons, unable to handle two very young children at once. As an illustration, during a recent visit, Harmony forgot to bring food or wipes and couldn't change H.C.'s diaper while also supervising A.M. Those basic safety concerns—along with the troubling family history—supply clear and convincing evidence that Harmony is unable to exercise a reasonable degree of supervision, and H.C. is imminently likely to suffer harm as a result. *See id.* § 232.96A(3)(b).

Finally, Harmony contends that placing H.C. in foster care was not the least restrictive option, as relative care with the grandmother was available.[8] After a dispositional hearing, the juvenile court "shall make the least restrictive disposition appropriate considering all the circumstances of the case." *Id.* § 232.99(4). In increasing order of restrictiveness, the court can continue the proceedings for twelve months, *id.* § 232.100; return custody to

---

[8] The State asserts Harmony waived error in the dispositional order by failing to identify any issue for review and failing to present argument or cite authority. But we have identified the issue clearly enough to address it. Harmony has urged throughout the proceedings that H.C. should be placed with the grandmother.

the parent, *id.* § 232.101; appoint a guardian, *id.* § 232.101A; or transfer custody to the department for placement, *id.* § 232.102(1)(a). If the court transfers custody to the department, the department places the child in any of five categories, with "adult relative" being the top priority. *Id.* § 232.102(1)(a)(1). We agree with the juvenile court that transfer of custody to the department was the least restrictive option consistent with H.C.'s best interests.

The department bypassed grandmother Rachel to place the child in foster care because it determined she was not a safe placement option. When Rachel asked to care for A.M., the department ordered an Interstate Compact on the Placement of Children (ICPC) study of her home in Illinois. The home was not approved. Rachel testified the denial related to a child abuse report against her in 2022 and her paramour's criminal history. The county attorney stated that Rachel was not truthful with the ICPC investigator. The juvenile court also found Rachel lacked credibility and questioned her parenting of Harmony and the death of Harmony's eight-month-old while living with Rachel.

Given these circumstances, H.C.'s best interests require continued removal from Harmony's custody. The juvenile court properly transferred custody to the department, and placement with the foster family where H.C. lives with her brother is the least restrictive option. Finding no grounds to modify the dispositional order, we affirm.

**AFFIRMED.**